NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PREMIER HEALTH CENTER, P.C., JUDSON G. SPRANDEL, II, D.C., BRIAN S. HICKS, D.C., TRI3 ENTERPRISES, LLC, BEVERLY HILLS SURGICAL CENTER, JEREMY RODGERS, D.C., and AMY O'DONNELL, D.C., on their own behalf and on behalf of all others similarly situated, and CONGRESS OF CHIROPRACTIC STATE ASSOCIATIONS, the AMERICAN CHIROPRACTIC ASSOCIATION, the OHIO STATE CHIROPRACTIC ASSOCIATION and THE MISSOURI STATE CHIROPRACTIC ASSOCIATION, in a representational capacity on behalf of their members, | |
| Plaintiffs, | |
| v. | |
| UNITEDHEALTH GROUP, UNITEDHEALTHCARE SERVICES, INC., OPTUMHEALTH, INC., HEALTH NET OF THE NORTHEAST, INC., and HEALTH NET OF NEW YORK, INC., | CIVIL ACTION NO: 11-425 (ES) <br><br> OPINION |
| Defendants. | |

**SALAS, District Judge.**

### I. Introduction

Pending before the Court is Defendant UnitedHealth Group's ("Defendant" or "United") motion to compel arbitration (D.E. 32)[1] as to Plaintiffs Judson G. Sprandel, Brian S. Hicks, Jeremy Rodgers, and Amy O'Donnell ("Plaintiffs"). The Court has considered the papers submitted in support of and in opposition to the instant motion and decides this matter without

---

[1] Defendants UnitedHealth Group, UnitedHealthCare Services, Inc., and OptumHealth Care Solutions, Inc., jointly file this motion. (United Moving Br. at 1 n.1). All three Defendants are collectively referred to as "United" in this Opinion, except where otherwise noted.

oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's motion to compel is GRANTED as to Plaintiffs Sprandel and Hicks.[2]

## II. Background

### A. Parties and Claims

The Court does not provide a detailed recitation of the facts at issue as the parties are thoroughly familiar with the facts and procedural history of this case.  To that end, the Court only recounts the essential facts necessary to determine the legal issues presented by the parties.

Plaintiffs Sprandel and Hicks are chiropractors who provide their services to subscribers of United's plan.  (Amended Complaint ("AC"), D.E. 15 ¶ 2).  Plaintiffs are in-network (INET) providers, meaning that they have signed provider agreements with United which requires them to accept payments from United in exchange for being listed in United's catalog of service providers.  (*Id.* ¶¶ 8-9).

Plaintiff Sprandel alleges that, beginning in mid-2009, he received requests for medical records to assist OptumHealth Care Solutions ("Optum")[3] in post-payment audits.  (*Id.* ¶ 42).  After receiving and reviewing the requested medical records, Optum notified Sprandel that it had overpaid him for claims relating to services not covered by the Plan or unsupported by Sprandel's medical records.  (*Id.* ¶¶ 43, 49).  Optum thus asked Sprandel to refund those overpayments.  (*Id.*).  Optum's refund request also notified Sprandel of his appeal rights and

---

[2] This motion is brought against Plaintiffs Rodgers and O'Donnell as well.  In their Opposition Brief, Plaintiffs state that "[t]o the extent there is any question from the [Amended Complaint], Plaintiffs Rodgers and O'Donnell will stipulate that they are not seeking any benefits or other relief for the time years ago in which they were INET providers, subject to an INET provider agreement."  (Pl. Opp. Br., D.E. 55 at 4 n.3).  United replies that, "[g]iven that stipulation, the claims asserted by Rodgers and O'Donnell appear, by definition, to be outside the scope of their arbitration agreements, and UnitedHealth does not seek to compel arbitration against them."  (United Reply Br., D.E. 63 at 2-3).  Thus, the Court does not address the motion to compel arbitration as it concerns Plaintiffs Rodgers and O'Donnell.

[3] Optum is a United entity that specifically deals with chiropractors.  (AC ¶¶ 101-02).

2

reminded him of its contractual right to offset the amounts owed against future payments. (*Id.* ¶ 44). Sprandel alleges that he submitted at least three appeals to Optum. (*Id.* ¶¶ 49-51).

Plaintiff Hicks alleges that, beginning in February 2010, Optum requested medical records for payments it had previously made to him. (*Id.* ¶ 53). After Hicks provided the records, Optum notified Hicks that his claims were not supported by "minimum documentation requirements." (*Id.* ¶ 54). Hicks allegedly appealed this determination by submitting additional supporting documents. (*Id.* ¶ 55). Although Hicks alleges that Optum "refused to consider" these documents (*id.* ¶ 56), Optum replied to Hicks written appeal and stated that "'[a]fter reviewing the documentation submitted, we find the overpayment refund request remains valid.'" (*Id.* ¶ 57). Hicks then filed a second appeal with Optum, which was denied. (*Id.* ¶¶ 60-61.)

On January 24, 2011, the individual plaintiffs, along with several chiropractic associations, sued UnitedHealth and its affiliated entities and subsidiaries alleging violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). On April 22, 2011, Plaintiffs filed their Amended Complaint. Thereafter, on June 21, 2011, Defendants filed this motion, seeking to compel the two individual plaintiffs into arbitration under the Federal Arbitration Act (FAA) pursuant to a mandatory arbitration clause included in each of their provider agreements. Plaintiffs have opposed this motion.

## III. Legal Standard

In deciding a motion to compel arbitration, "[t]he party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (internal quotations omitted). In deciding the motion, the court can consider "undisputedly authentic documents" attached to the motion—without transforming

the motion into one for summary judgment—"if the plaintiff's claims are based on the document[s]." *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 388 n.4 (3d Cir. 2008).

However, federal law strongly favors the enforcement of arbitration agreements. *Kaneff*, 587 F.3d at 624. The Federal Arbitration Act provides: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act represents a "national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). It "leaves no place for exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, "where the contract contains an arbitration clause," arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

The strong federal policy favoring arbitration, however, does not automatically lead to the submission of a dispute to arbitration upon request. Before compelling a party to arbitrate, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (citation omitted).

To determine whether the parties have agreed to arbitrate, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 944 (1995). Once a court has found that there is a valid agreement to arbitrate, the determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law." *China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) (internal citations and quotation marks omitted). In determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (internal quotation marks and citations omitted); *see Rohm & Haas*, 522 F.3d at 331 (citation omitted). Where the arbitration agreement is broad, courts will presume that any disputes between the parties to the agreement are arbitrable. *See AT&T Techs.*, 475 U.S. at 650.

IV. **Analysis**

    **A.  Whether Plaintiffs' Claims Fall Within the Scope of the Arbitration Clause**

As explained above, before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is a valid agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. *See Pritzer v. Merrill Lynch, Pierce, Genner & Smith*, 7 F.3d 1110, 1112 n.1 (3d Cir. 1993) ("We hold only that statutory ERISA claims are subject to arbitration under the FAA when the parties have executed a valid arbitration agreement encompassing the claims at issue."). Because Plaintiffs Sprandel and Hicks do not deny that a valid agreement to arbitrate exists (*See* Pl. Opp. Br. at 15), the central question here is whether the issues raised by Plaintiffs fall within the scope of the arbitration clause.

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance

5

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (citation omitted). Consequently, a court must construe all doubts concerning the scope of arbitrable issues in favor of arbitration. *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). However, "while interpretive disputes should be resolved in favor of arbitrability, a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007) (internal quotations omitted).

> Here, the arbitration provision in Sprandel and Hicks's provider agreements states:
>
> In the event of any dispute arising out of or relating to this Agreement, Provider and ACN Group shall first attempt in good faith to resolve the dispute mutually between them . . . . If Provider and ACN Group are unable to resolve a dispute by mutual agreement, then matters in controversy may be submitted, upon the motion of either party, to arbitration under the Commercial Rules of the American Arbitration Association (AAA).

(*See* Sprandel Provider Agreement, D.E. 32-3 ¶ 21; Hicks Provider Agreement, D.E. 32-4 ¶ 21). This clause appears to be rather broad, calling for arbitration of "any dispute arising out of or relating to" the Agreement. *See Local 827, Intern. Broth. of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc.*, 458 F.3d 305, 310 (3d Cir. 2006); *Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) ("When phrases such as 'arising under' and 'arising out of appear in arbitration provisions, they are normally given broad construction."). Accordingly, there is a strong presumption that Sprandel and Hicks's claims are subject to arbitration. *See AT&T Technologies, Inc.,* 475 U.S. at 650 ("Such a presumption [for arbitrability] is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder. . . . ") (citation omitted). In such cases, "[i]n the

6

absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citing *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960)).

This District very recently dealt with facts and issues similar to those raised by Plaintiffs. In *Association of New Jersey Chiropractors* ("ANJC") *v. AETNA*, No. 09–3761, 2011 WL 2489954 (D.N.J. June 20, 2011), the individual plaintiffs were licensed chiropractors who, pursuant to assignments from their patients, regularly submitted claims for reimbursement directly to Aetna, an offerer and administrator of commercial health plans, for services rendered to Aetna's insureds. *Id.* at *1. Through the use of "Post Payment Audits," Aetna determined that certain benefits paid to plaintiffs were in fact overpaid and Aetna demanded reimbursement from the providers for those amounts. *Id.* at *2. Plaintiffs received numerous communications from Aetna seeking to compel payments of these amounts. *Id.* Further, plaintiffs were subject to a pre-payment review process by which every claim submitted to Aetna was reviewed prior to payment. *Id.* Plaintiffs alleged that—under this process—claims submitted by the providers were uniformly denied and no means of appeal was provided. *Id.* Plaintiffs challenged these "adverse benefit determinations" and contended that the actions of Aetna violated ERISA. *Id.* at 2, 7. For that reason, Plaintiffs filed suit seeking "(1) unpaid benefits and interest; (2) declarations that Aetna violated various obligations under federal law; and (3) an order enjoining Aetna from seeking to further recover alleged overpayments and directing Aetna to return any funds it collected based on its allegedly improper recoupment efforts." *Id.*

In response, defendants moved to compel two plaintiffs, Egozi and Manz, into arbitration. *Id.* at *14. In determining whether the claims raised by Egozi and Manz fell within

the scope of the parties' arbitration agreements, the court found that both plaintiffs had agreed to arbitrate "[a]ny controversy or claim arising out of or relating to [the] Agreement" except for "temporary, preliminary, or permanent injunctive relief or any other form of equitable relief." *Id.* Egozi and Manz argued that their claims were outside the scope of this provision because (1) they alleged their claims were equitable in nature and the arbitration agreements expressly exclude claims seeking any kind of equitable relief; and (2) their claims did not "aris[e] out of or relat[e] to" their respective agreements but were instead brought under ERISA. *Id.* at *15.

The court determined that the ultimate relief sought by Egozi and Manz was legal rather than equitable, as they sought primarily monetary damages and monies due under their provider agreements. *Id.* at *16. Furthermore, the court found that Egozi's and Manz's claims arose out of their provider agreements. *Id.* Specifically, the claims clearly related to services the plaintiffs provided in accordance with their provider agreements. *Id.* In addition, plaintiffs' challenges to Aetna's actions related directly to provisions within their respective agreements. *Id.* For example, both Egozi and Manz challenged Aetna's determination of and efforts to recover alleged overpayments, relating to a specific section in each agreement, which governs payments to providers. *Id.* Thus, the Court concluded these plaintiffs' claims arose out of and/or related to their respective agreements. *Id.* Consequently, the court granted defendants' motion to compel arbitration and dismissed the claims of Plaintiffs Egozi and Manz. *Id.* Notably, the court did so despite the fact that Egozi and Manz were standing in the shoes of their patients as assignees. *Id.* at *9; (*see also ANJC v. AETNA*, No. 09–3761, First Amended Complaint, D.E. 20 ¶ 50).

Plaintiffs argue that *ANJC* is not applicable here because in *ANJC*, the plaintiffs were challenging Aetna's practice of placing providers into pre-placement review after making repayment demands, a claim that is not at issue here. (Pl. Opp. Br. at 19). In contrast, Plaintiffs

8

argue that Sprandel and Hicks are not merely challenging the process United follows for processing claims, but are making a direct challenge to United's effort to recover prior benefit payments, which directly arise under ERISA. (*Id.* at 19-20). Further, Plaintiffs contend, albeit in a footnote, that "[t]o the extent the decision in *ANJC* is considered to be contrary to [Plaintiffs' position], Plaintiffs respectfully suggest that it was wrongfully decided and should not be followed." (*Id.* at 20 n.15). Plaintiffs do not cite any case law to support this contention. (*See id.*)

Notwithstanding Plaintiffs' contention, the Court finds *ANJC* persuasive. Indeed, the argument for arbitration is even stronger here than it was in *ANJC* for three reasons.

First, the arbitration clause before this Court is broad and does not contain any restrictions as to the type of claim that may be submitted to arbitration. This is in sharp contrast to the clause in *ANJC*, which carved out an exception for claims for injunctive relief. Where the arbitration agreement is broad, courts will presume that any disputes between the parties to the agreement are arbitrable. *See AT&T Techs.*, 475 U.S. at 650.

Second, Plaintiffs' claims arise directly from their provider agreements. Like Egozi and Manz in *ANJC*, Sprandel and Hicks are challenging "adverse benefit determinations" under ERISA made by United. (AC ¶¶ 52, 61). Also like Egozi and Manz, Sprandel is challenging actions taken by United to recover overpayments in connection with claims for services. (*Id.* ¶ 52). Sprandel also takes issue with United's denial of the three appeals he allegedly submitted to OptumHealth. (Id. ¶¶ 49-51). Hicks likewise challenges United's determination that his claims were not supported by "minimum documentation requirements," (*id.* ¶ 54), its demand for an overpayment refund, and its denial of his second appeal. (*Id.* ¶ 49-52). These claims are similar to those raised by Egozi and Manz in *ANJC*, which were sent to arbitration despite plaintiffs'

9

standing by assignment. More importantly, these claims appear to relate to services Sprandel and Hicks provided in accordance with their provider agreements and the accompanying manual. (*See* United Moving Br. at 12-14) (tying each claim brought by Sprandel and Hicks to a different section in the provider agreements or manuals); (Sprandel Provider Agreement, D.E. 32-3 ¶ 21; Hicks Provider Agreement, D.E. 32-4 ¶ 21). Importantly, Plaintiffs do not challenge the validity of the agreements or the accompanying manuals. Thus, because Plaintiffs' claims arise directly from the provider agreements—and therefore there is no reason to look at ERISA—these claims should be sent to arbitration. Plaintiffs' unsupported argument that *ANJC* "was wrongfully decided and should not be followed" is wanting.

Finally, the Supreme Court has urged that "where the contract contains an arbitration clause," arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Techs., 475 U.S. at 650 (citation omitted). As stated above, it appears that Plaintiffs' claims do arise from the provider agreements. (*See* United Moving Br. at 12-14) (tying each claim brought by Sprandel and Hicks to a different section in the provider agreements or manuals); (Sprandel Provider Agreement, D.E. 32-3 ¶ 21; Hicks Provider Agreement, D.E. 32-4 ¶ 21).

Accordingly, the Court concludes that Plaintiffs' claims do fall within the scope of the arbitration provision and therefore should be dealt with in arbitration.

### B. Plaintiffs' Arguments for Allowing ERISA to Govern the Claims

Plaintiffs advance several arguments contending that ERISA—and not the provider agreements—governs their claims, and therefore Sprandel and Hicks cannot be compelled into arbitration. Each of these arguments is addressed in turn.

First, Plaintiffs argue—for the most part relying on court decisions not binding on this Court[4]—that their claims do not "touch matters" within the scope of the provider agreements because the actions concern an independent wrong which can be addressed without reference to the agreements.[5] (Pl. Opp. Br. at 15). Specifically, Sprandel and Hicks argue that their claims concern the right to payment rather than the amount of payment, and therefore ERISA governs this dispute despite their status as INET providers. (*Id.*) However, only two of the out-of-Circuit decisions Plaintiffs cite involved arbitration agreements. One of those cases, *Weiner v. Citigroup*, No. 01-2246 U.S. Dist. LEXIS 2615 (N.D. Tex. Feb. 19, 2002), is a Magistrate's Report & Recommendation from the Northern District of Texas in which the motion to compel into arbitration was governed by the Texas General Arbitration Act. *Id.* at *4-5. Based on a cursory search, it is unclear to the Court whether the Report was adopted by the district court in the Northern District of Texas. The other case, *Blue Cross of California v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999), is inapposite because Plaintiffs' are doing more than simply enforcing their rights in the abstract, as discussed more fully below. *Id.* at 1052 (finding no basis to conclude that "the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan"). Finally, Plaintiffs' reliance on *ANJC* is misplaced as the court's holding undermines Plaintiff's position.[6]

---

[4] To support this contention, Plaintiffs cite to court decisions in the First Circuit, Seventh Circuit, Ninth Circuit, Northern District of Texas, Eastern District of California, Southern District of Texas, Eastern District of Kentucky and, to their credit, one decision from this District—*ANJC*—and one from the Third Circuit—*Pascack Valley*. (Pl. Opp. Br. at 17-18).

[5] In their Opposition Brief, Plaintiffs spend much time laying out what they call the "touch matters test." They argue that the proper test under the second prong of the analysis is whether the issues in dispute touch matters within the scope of the parties agreement. They explain that in performing this analysis, courts have asked whether the dispute could be resolved without reference to the agreement. Plaintiffs do not cite to any binding authority using this formulation of the second prong of the analysis except for a footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 n.13 (1985). This Court applies the law articulated by the Third Circuit.

[6] Similarly, Plaintiffs' reliance on *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 403-04 (3d Cir. 2004), is inapposite because that case did not involve a dispute over an arbitration agreement.

The Court's reading of the Amended Complaint indicates that Plaintiffs are doing more than simply arguing over the "right to payment."[7] Indeed, Plaintiffs seek the following relief: awarding of unpaid benefits, injunctive and declaratory relief to prevent United's continuing actions detailed herein that are undisclosed and unauthorized by EOCs and SPDs (AC ¶ 173(b)); awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its regulations (*id.* ¶ 173(c)); an order directing United to recalculate and issue unpaid benefits to Providers that were unpaid or underpaid as a result of United's actions, with interest (*id.* ¶ 173(f)); an order enjoining United from continuing to pursue its recoupment efforts and directing it to pay proper benefits in the form of a return of any sums previously paid by or withheld from the Individual Plaintiffs in response to United's recoupment efforts, plus interest (*id.* ¶ 173(g)); an order enjoining United from continuing to apply the Optum policies that are applied to improperly reduce coverage for chiropractic services, and disgorgement of the profits it has earned by denying such coverage through its actions taken in violation of ERISA, plus interest (*id.* ¶ 173(h)) (emphasis added). While the providers have a right to payment pursuant to assignments from their patients (United subscribers), a reading of the relief described above and the claims illustrated throughout the Amended Complaint indicates that Plaintiffs are not only challenging alleged benefit denials, but pre-claim procedures and overpayment determinations as well—claims that do not concern solely the right to payment but the processes United uses to make payment determinations. In addition, they are seeking monetary relief in the form of return of improperly recouped monies, withheld payments, and disgorgement. These legal and equitable remedies, combined with the claims as described in the Amended Complaint (*see*,

---

[7] Importantly, Plaintiffs have not defined the term "right to payment." They have only cited to cases—not binding on this Court—which stated in dicta that disputes over the right to payment may implicate ERISA and assignments. (*See* Pl. Opp. Br. at 17-18).

*generally*, *id.* ¶¶ 145-173), indicate that Plaintiffs are concerned with much more than their right to payment in the abstract. *Pascack Valley* is inapposite because that case did not involve the presence of an arbitration agreement; and *Anesthesia Care*, on which the *Pascack* court relied, held that claims asserted by health care providers against a health care plan for breach of their provider agreements were not completely pre-empted under ERISA even though the medical providers had obtained assignments of benefits from beneficiaries of the ERISA-covered health care plans. *Id.* at 1047, 1052.

Accordingly, the Court finds the foregoing argument unavailing because Plaintiffs are doing more than simply enforcing their right to payment, and because the law on which they rely is inapposite for factual and jurisdictional reasons.[8]

Second, Plaintiffs contention that ERISA applies to repayment claims because "ERISA provides the 'exclusive remedy' by which an insurer such as United may seek to recoup overpayments" (Pl. Opp. Br. at 5, 20) is misplaced. The cases that Plaintiffs rely on are (a) not binding on this Court[9] and (b) are factually distinguishable. Specifically, these cases neither discuss arbitration agreements nor do they address the assignments of benefits. Accordingly, Plaintiffs' argument is unavailing.

Third Plaintiffs argue that ERISA "governs any action brought by Plaintiffs to challenge [Defendant's attempted] recoupment." Plaintiffs rely on three cases, two of which are not

---

[8] It is important to note that the cases Plaintiffs rely upon are factually dissimilar and jurisdictionally inappropriate because there is a strong presumption of arbitrability governing this dispute. *Kaneff*, 587 F.3d at 624. In other words, the Court is reluctant to make inferences from cases which lack essential facts like the existence of an arbitration agreement or an assignment. The cases cited and relied upon by Plaintiffs offer no guidance to this Court in determining how to interpret the provider agreements in light of ERISA and in the face of a strong presumption of arbitrability.
[9] Plaintiffs cite to decisions in the Eastern District of Louisiana, Fifth Circuit and Seventh Circuit to support this argument.

binding in this Circuit.[10] The Third Circuit case on which Plaintiffs rely—*Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005)—was a suit between several insureds and the administrator of a health plan governed by ERISA and did not involve assignments, provider agreements, or arbitration clauses. To that end, Plaintiffs' argument is misguided.

Fourth, Plaintiffs argue that the arbitration clause in the agreements is inapplicable here because it violates the statutory limitations ERISA places on such arbitration provisions. (Pl. Opp. Br at 8). As Plaintiffs correctly point out, the Department of Labor has promulgated regulations issued under ERISA which impose "clear and unambiguous requirements for when and how it is appropriate to include arbitration as a dispute resolution process relative to benefit determinations." (*Id.* at 9). Plaintiffs argue that these limitations apply to the arbitration clauses in the provider agreements because Plaintiffs are assignees of their patients. (*Id.* at 12). Plaintiffs are incorrect. Again, Plaintiffs rely mostly on cases that are not binding on this Court.[11] The single case in this District on which Plaintiffs rely—*Zahl v. Cigna Corp.*, No. 09-1527, 2010 U.S. Dist. LEXIS 32268 (D.N.J. Mar. 31, 2010)—did not involve an arbitration agreement, and, therefore, provides no support for Plaintiffs' argument. Accordingly, this argument is unavailing because Plaintiffs rely on law which is inapposite for factual and jurisdictional reasons.

Fifth, Plaintiffs argue that Defendant's request for arbitration and reliance on the provider agreement in this matter is based on a misunderstanding of what Plaintiffs are seeking. In their Opposition Brief, Plaintiffs claim to be seeking a "full and fair review" as required under ERISA. However, that is not the only form of relief requested by Plaintiffs in the Amended

---

[10] Plaintiffs cite to Fifth Circuit and Second Circuit law to support this argument.

[11] Plaintiffs cite to decisions in the Ninth Circuit, Eastern District of Wisconsin, Western District of North Carolina, Northern District of Illinois, Eastern District of Texas, Southern District of Ohio, and the Northern District of Georgia.

14

Complaint.  For example, Plaintiffs ask the Court to declare any further review or appeal to be futile and to allow the matter to proceed to litigation.  (AC ¶166-68 ("United failed to provide a 'full and fair review [of the denied claims],' failed to provide reasonable claims procedures, and failed to make necessary disclosures to its Insureds. Appeals of Providers and members of the Classes should be deemed exhausted or excused by virtue, inter alia, of United's numerous procedural and substantive violations.  The failed appeals of the Individual Plaintiffs show the futility of exhausting appeals to United. Exhaustion of internal appeals under ERISA should, therefore, be deemed to be futile.").  In addition, as noted earlier in this Opinion, Plaintiffs are also seeking injunctive relief, declaratory relief, return of monies, and disgorgement.  Plaintiffs now, with their attempt at limiting the relief they seek, appear to be amending their Amended Complaint via their Opposition Brief.   Plaintiffs' methodology, however, is inappropriate. *Cohen v. Independence Blue Cross*, No. 10-4910, 2011 WL 5040706, at *5 (D.N.J. Oct. 24, 2011) ("Procedurally, Plaintiffs' assertions, raised only in their brief, may not be considered by the Court on this [motion] since Plaintiffs may not amend their Amended Complaint via a motion brief.") (citing *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007)). Accordingly, Plaintiffs seek more than a full and fair review under ERISA.  Consequently, their argument that ERISA controls and prohibits arbitration lacks merit.

Finally, Plaintiffs argue that United's motion must be denied because Optum is not a party to the arbitration agreement with Plaintiffs.  (Pl. Opp. Br. at 22). Plaintiffs explain that the arbitration agreements are with the American Chiropractic Network.  (*Id.*).  However, in the Amended Complaint, Plaintiffs acknowledge that American Chiropractic Network is the former name of Optum.  (*See* AC ¶ 9). Plaintiffs also acknowledge that Julie A. Gansen, an employee of UnitedHealth Group and Vice President of OptumHealth Care Solutions, indicates in her

15

declaration that OptumHealth Care Solutions and Optum Health are the same entity. (*See* Gansen Decl., D.E. 32-2 ¶¶ 1 n.1 & 3-4). Plaintiffs accept this explanation in a footnote. (Pl. Opp. Br. at 22 n.17). In light of the foregoing, the Court does address this argument any further and assumes the names of the Defendants will be correct in future filings.

In light of the foregoing, the Court finds that the claims brought by Plaintiffs Sprandel and Hicks do fall within the scope of the arbitration clause contained in the provider agreements. Therefore, under *Trippe Mfg. Co.* and *ANJC*, Plaintiffs Sprandel and Hicks must be compelled into arbitration.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to compel is GRANTED. Plaintiffs Sprandel and Hicks are hereby compelled to arbitration. Accordingly, their claims are dismissed without prejudice. An appropriate Order will accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**