<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **PREMIER HEALTH CENTER, P.C.,** | : | |
| **et al.,** | : | **Civil Action No.: 11-425 (ES)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **<u>AMENDED OPINION</u>** |
| | : | |
| **UNITEDHEALTH GROUP, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| _____ | : | |

**<u>SALAS, District Judge</u>**

Defendants UnitedHealth Group, UnitedHealthcare Services, Inc., OptumHealth Care Solutions, Inc., Health Net of the Northeast, Inc., and Health Net of New York, Inc., (collectively "Defendants") seek dismissal of Plaintiffs' Amended Complaint (AC, D.E. 15) for lack of standing under Fed. R. Civ. P. 12(b)(1), and for having failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Health Net Moving Br., D.E. 29 at 7-8; United Moving Br., D.E. 31 at 8).[1]  The Court has considered the briefs submitted in support of and in opposition to the present motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Health Net's motion to dismiss (D.E. 29) is GRANTED in part and DENIED in part.  United and Optum's motion to dismiss (D.E. 31) is DENIED.

_____

[1] Defendants UnitedHealth Group, UnitedHealthcare Services, Inc., and OptumHealth Care Solutions, Inc. join in the same motion, (D.E. 31), and Defendants Health Net of the Northeast, Inc. and Health Net of New York, Inc. join in the same motion (D.E. 29).

I.      **Jurisdiction**

Plaintiffs bring this Complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*  (AC ¶ 1).  Accordingly, this Court retains subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).  *See Tomasko v. Weinstock*, 255 F. App'x 676, 679 (3d Cir. 2007).

II.     **Background**

  A. **Parties**

    i.      **Plaintiffs**

Plaintiff Premier Health Center, P.C. ("Premier") is a New Jersey corporation that provides health care services to individuals insured by United.  (AC ¶ 2, 6).  Premier has its patients execute written assignments, in which they agree that it may bill and receive payments directly from United.  (*Id.*).

Judson G. Sprandel, II, D.C. ("Sprandel") is a licensed Doctor of Chiropractic who practices in Canton, Ohio, and, as an in-network provider, provides services to United insureds. (*Id.* ¶ 2, 8).

Brian Hicks is a licensed Doctor of Chiropractic who practices in Bixby, Oklahoma, and, as in in-network provider, provides services to United insureds.  (*Id.* ¶ 9).

Plaintiff Tri3, headquartered in Wauconda, Illinois, is a health care facility that provides durable medical equipment to United insureds pursuant to prescriptions from the insureds' health care providers.  (*Id.* ¶ 10).

Plaintiff Beverly Hills Surgical Center is a licensed surgical center with offices in Beverly Hills, California, that provides health care services as an out-of-network provider to numerous United insureds.

Jeremy Rodgers is a licensed chiropractic radiologist and board-certified athletic trainer who practices in Louisville, Colorado and provides services to numerous United insureds as an in-network provider. (*Id.* ¶ 13).

Amy O'Donnell is a licensed Chiropractic Physician who works as an Integrative Chiropractor in Cos Cob, Connecticut, and has provided services to numerous United insureds as an in-network and, currently, an out-of-network provider. (*Id.* ¶ 14).

The above individual Plaintiffs (collectively, "Plaintiffs") are suing Defendants UnitedHealth Group, UnitedHealthcare Services, Inc., OptumHealth Care Solutions, Inc., Health Net of the Northeast, Inc., and Health Net of New York, Inc. on their own behalf and as representatives of a putative class for alleged violations of ERISA. (*Id.* ¶¶ 2-4).

Plaintiffs Congress of Chiropractic State Associations (COCSA), American Chiropractic Association (ACA), Ohio State Chiropractic Association (OSCA), and Missouri State Chiropractic Association (MSCA) (collectively, "Associations") are membership organizations that serve the interests of chiropractic physicians. (*Id.* ¶¶ 15-20). They bring this action in a representational capacity on behalf of their members who are health care providers who have provided services to United insureds and have been injured by Defendants' alleged violations of ERISA. (*Id.* ¶ 19).

**ii.    Defendants**

UnitedHealth Group is a corporation organized and existing under the laws of Minnesota, which issues and administers health care plans around the country through its various wholly owned and controlled subsidiaries, including Defendant United HealthCare Services Inc. (*Id.* ¶ 21). Defendant Optum is one of UnitedHealth Group's wholly-owned and controlled subsidiaries, headquartered in Golden Valley, Minnesota. (*Id.*).

Defendant Health Net of the Northeast, Inc., which is headquartered in Shelton, Connecticut, provides administrative services to a number of subsidiaries of UnitedHealth Group, including Defendant Health Net of New York, Inc., Health Net Insurance of New York, Inc., Health Net of New Jersey, Inc., and Health Net of Connecticut, Inc. (*Id*. ¶ 22). Defendant Health Net of New York, Inc. is also based in Shelton, Connecticut. (*Id*.). The assets of Health Net of the Northeast Inc., including its various licensed subsidiaries, such as Health Net of New York Inc., were acquired by UnitedHealth Group in December 2009. (*Id*.) UnitedHealth Group now wholly owns and controls Health Net of New York, Inc. (*Id*.).

### iii.    Plaintiffs' Amended Complaint

United provides its members with a Summary Plan Description ("SPD"), a document designed to describe in layperson's language the material terms, conditions, and limitations of the health care plan. (*Id*. ¶ 90). The full details of the plan, which are summarized in the SPD, are contained in the Evidence of Coverage ("EOC") that governs each member's health plan. (*Id*.).

After performing its services, pursuant to the assignment of benefits form, Premier submits a claim to United[2] who will then make payment to Premier on the claim. Occasionally, United will engage in post-payment audits of benefit payments. (*Id*. ¶¶ 3, 23). Following the post-payment audit process, United determined that they had erroneously made overpayments to the Plaintiffs and demanded repayment. (*Id*. ¶ 3). Plaintiffs allege that United "took steps to coerce the Individual Plaintiffs and other Class members to return the alleged overpayments, including by withholding payments from new and unrelated services and applying them to the alleged debt, or by filing invalid lawsuits seeking to compel repayment." (*Id*.).

---

[2] Plaintiffs generally do not differentiate between UnitedHealth Group, UnitedHealthcare Services, Inc., and OptumHealth Care Solutions, Inc. in this part of the Amended Complaint.

Plaintiffs further allege that many of the United Plans at issue are governed by ERISA, "which establishes strict rules and procedures that United or other entities that administer ERISA plans must comply with." (*Id.* ¶ 4). Furthermore, "ERISA sets forth specific steps that must be followed when an insurer such as United makes an 'adverse benefit determination' by denying or reducing benefits, including by providing a 'full and fair review' of the decision." (*Id.*). "By making a retroactive determination that a previously paid benefit was, in fact, paid improperly, an insurer makes an adverse benefit determination under ERISA." (*Id.*). Plaintiff avers that "United has violated ERISA by making its retroactive adverse benefit determinations without complying with ERISA['s] requirements." (*Id.*).

On January 24, 2011, Plaintiffs filed a complaint in the United States District Court for the District of New Jersey. On April 22, 2011, Plaintiffs filed an Amended Complaint, which is the subject of Defendants' United and Health Net motions to dismiss. The parties have submitted their respective briefs and the Defendants' motions are now ripe for this Court's adjudication.

## III. Legal Standards

### A. 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Fed. R. Civ. P. 12(b)(1) because standing is a jurisdictional matter. *See St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.").

Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth

in the complaint, and must construe those facts in favor of the nonmoving party.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).  On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**B.  12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), "courts are required to accept all well pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010) (holding that contradictory factual assertions on the part of defendants must be ignored).  Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).  But, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations." *McCargo v. Hall*, No. 11-553, 2011 WL 6725613, *1 (D.N.J. 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)).  A pleading that

offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (citations omitted). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *DiFronzo v. Chiovero*, 406 F. App'x 605, 607 (3d Cir. 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration and emphasis in original)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.

In *Twombly*, the Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss. It refined this approach in *Iqbal*. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement of relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

With these standards in mind, the Court analyzes the parties' arguments for dismissal.

IV.     **Analysis**

1.  **Standing for Premier's ERISA Claims**

    a.      **Whether Proof of Actual Assignments is Required**

Health Net contends that, as a threshold matter, Premier lacks standing to sue under ERISA for two reasons: (1) Premier is not a participant or beneficiary of the United plan and (2) they have not provided proof of an actual, valid assignment of benefits.  (*See* Health Net Moving Br. at 8-10).  Health Net argues that the language submitted by Plaintiffs in their Amended Complaint is insufficient to establish derivative standing.  (*Id.* at 8).  Specifically, Defendants contend that Plaintiffs need proof of an actual assignment signed by a patient of one of the providers, and here, Plaintiffs only offer excerpted language from a standard form.  (*Id.* at 8-9).  Similarly, United argues that Count II of Plaintiffs' Amended Complaint, which challenges OptumHealth's utilization review program, fails to state a cause of action for benefits under ERISA because Plaintiffs "do not allege that any patient executed a valid assignment of a claim for benefits that was denied because of the program's requirements."  (United Moving Br. at 2).  Thus, according to United, Count II must be dismissed in its entirety.  (*Id.*).  And because there is no underlying ERISA violation as a matter of law, "Count IV also must be dismissed to the extent it seeks equitable relief under ERISA § 502(a)(3), § 29 U.S.C. § 1132(a)(3), based on the utilization review process."  (*Id.*).

By contrast, Plaintiffs argue that proof of an actual assignment is unnecessary in order to establish standing.  (Pl. Opp. Br. re: United, D.E. 56 at 11).  Relying on *Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga.*, 598 F. Supp. 2d 1344, 1362 (N.D. Ga. 2009), Plaintiffs argue that providing excerpted language from a standard form is sufficient to establish proof of assignment and therefore derivative standing.  (*Id.*).

Under ERISA's § 502(a) civil enforcement provision, standing is generally "limited to participants and beneficiaries." *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004); 29 U.S.C. § 1132(a)(1)(B). The Third Circuit has not addressed the question of whether a health care provider may obtain standing to sue under § 502 by assignment from a plan participant or beneficiary. *See Pascack Valley*, 388 F.3d at 401 n.7; *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 435 (3d Cir. 2005). However, the Third Circuit has acknowledged that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan." *Pascack Valley*, 388 F.3d at 401. Since *Pascack Valley*, courts in this district have interpreted the Third Circuit's statements as an indirect affirmation of derivative standing for health care providers. *See, e.g., Zahl v. Cigna Corp.*, No. 09-1527, 2010 WL 1372318, at *2 (D.N.J. Mar. 31, 2010) ("It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits."); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.,* No. 08-6160, 2009 WL 3233427 at *4 (D.N.J. Sept. 30, 2009) (implicitly accepting that an ambulatory surgical center has standing to sue under ERISA as a valid assignee); *N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 07-4812, 2008 WL 4371754, at *3 (D.N.J. Sept. 18, 2008); *Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) (finding that a health care provider has standing to sue under ERISA as a valid assignee).

Plaintiffs are not participants or beneficiaries of an ERISA plan and therefore, on their own, do not have standing to bring suit. *Pascack Valley*, 388 F.3d at 400. However, Plaintiffs argue, and Defendants do not dispute, that as an assignee of a plan participant (the health plan subscribers), Plaintiffs would have derivative standing to sue under § 502(a). (*See* Pl. Opp. Br. re: Health Net at 18-19; Pl. Opp. Br. re: Health Net at 10 & n.3). In this case, that requires Plaintiffs to prove the existence of a valid assignment. In the absence of proof of an express valid assignment, Plaintiffs would not have standing to bring the claims and therefore this matter would be dismissed. *Cmty. Med. Center*, 143 F. App'x at 436 ("failure to establish that an appropriate assignment exists is fatal to standing").

The Court in *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 10-04414, 2011 WL 500195 (D.N.J. Feb. 10, 2011), dealt with circumstances similar to those presented here. In that case the Court adopted a Magistrate Judge's recommendation that the Court deny plaintiff's motion for remand, finding that plaintiff's claims are sufficient to establish ERISA claims for federal jurisdiction. *See id.* at *1; *see also Sportscare of America, P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 WL 223724, at *4 (D.N.J. January 24, 2011). In their complaint, plaintiffs only provided the following statement with regard to the existence of assignments: "At all times mentioned herein the plaintiff was out-of-network and did not have a contract with any of the defendants therefore entitling the plaintiff to be paid for services rendered to individual insureds through the use of assignment of benefits documents or through patient reimbursement." *Id.* at *3 (citation omitted). Plaintiff in that case alleged that defendant was required to provide proof of actual assignments in order to establish subject matter jurisdiction under ERISA in federal court. *Id.* The court disagreed, and found plaintiff's pleading conclusively established the existence of federal jurisdiction. *Id.* The court determined that the actual existence of

assignments was irrelevant for the purposes of Plaintiff's remand motion. *Id.* at \*4. It noted that "all well-pleaded allegations in [the] complaint are assumed true in determining existence of federal subject matter jurisdiction." *Id.* (citing *Goosby v. Osser*, 409 U.S. 512, 521 n.7 (1973)). Most importantly, the court held that "Defendants need not attach the assignments to their notice of removal or supply them with their briefs. Plaintiff has unequivocally alleged that assignments exist and has pleaded that it is relying on them to support its right to recovery. Nothing further is required." *Id.*

The Court finds Judge Martini's decision persuasive. Accordingly, the reasoning that motivated Judge Martini's decision in *Sportscare* guides this Court's reasoning in grappling with the standing issue presented here.

In this case, Plaintiffs provide the following language in their Amended Complaint as proof of assignment of benefits:

> The standard "Assignment of Benefits Form" that Premier Health has its patients sign states:
>
> I hereby instruct and direct [United or Health Net] Insurance Company to pay by check made out and mailed out to: Premier Health Center, P.C., 385 Prospect Ave., 1Fl., Hackensack, NJ 07601, Or
>
> If my current policy prohibits direct payment to doctor, I hereby also instruct and direct you to make out the check to me and mail it as follows: [to same address]
>
> For the professional or expense benefits allowable, and otherwise payable to me under my current insurance policy as payment toward the total charges for the professional services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. This payment will not exceed my indebtedness to the above-mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment.

(AC ¶ 7). The Court finds this evidence sufficient to establish derivative standing by assignment at this stage of the litigation. While Plaintiffs do not indicate from which assignment form this

language was taken, or which of their patients actually signed the form, providing that level of specificity is unnecessary for the following two reasons.  First, the Court accepts all well pleaded allegations in the Amended Complaint as true.  *Phillips*, 515 F.3d at 234.  Second, under the holding of *Sportscare*, Defendants need not attach the assignments to their Amended Complaint or briefs.  *Sportscare*, 2011 WL 223724, at *4.  Plaintiffs have clearly alleged that assignments exist and have pleaded that they are relying on them to support their right to recovery.  *Id.*  Nothing more is required.  *Id.*

Accordingly, this Court concludes that the standard form language provided by Plaintiffs is sufficient to establish derivative standing by assignment to bring their ERISA claims.

### b.    Whether the "Assignment" is Actually a Direction of Payment

Next, the Health Net Defendants argue that the language provided by Plaintiffs in the Amended Complaint is not an assignment of benefits but merely a direction of payment.  (Health Net Moving Br. at 10).

Having reviewed the standard form language submitted by Plaintiffs, the Court finds that the language provided by Plaintiffs clearly demonstrates, at the very least, an assignment of a right to reimbursement.  (AC ¶ 7).  The plain language of the form indicates that the assignor is asking the insurance company to make "direct payment to [the] doctor."  (*Id.*).  In other words, the assignor is vesting in the assignee (the provider) the right to receive payment for "the total charges for the professional services rendered."  (*Id.*).  The assertion "[t]his is a direct assignment of my rights and benefits under the policy" is, at the very least, informed by the statements before and after it discussing payment to the provider for services rendered.  (*Id.*).  While it is unclear whether the subscribers intended to assign all of their rights under ERISA, the Court does not have to make such a determination because the Court is concerned here only with the right to reimbursement, attempted recoupments of overpayments, and United's interference

with the payment or reimbursement process.  It is enough that the assignor assigned his or her right to reimbursement to the provider.

Defendants' arguments that the forms cannot be assignments of benefits because the forms do not sufficiently describe the member's rights under ERISA and the language in the "standard" form is not clear and unequivocal, are unavailing.  (Health Net Moving Br. at 15). First, Defendants do not cite to any law to support these contentions.  Second, the courts in this district that have found valid assignments of benefits have often been provided with less specificity than what Plaintiffs submitted in their Amended Complaint.  *See, e.g., Sportscare*, 2011 WL 223724, at *3 ("At all times mentioned herein the plaintiff was out-of-network and did not have a contract with any of the defendants therefore entitling the plaintiff to be paid for services rendered to individual insureds through the use of assignment of benefits documents or through patient reimbursement.").  Accordingly, this Court concludes that the standard form language provided by Plaintiffs is not a direction of payment but an assignment of the right to reimbursement.

### c.  Whether the Assignments Include the Right to Pursue Litigation

Having found that the United subscribers assigned their rights to reimbursement to the provider-Plaintiffs, the Court next considers whether a right to reimbursement necessarily includes the right to pursue litigation in order to enforce that right.  Defendants believe that while the assignment forms may allow the health care providers to seek reimbursement for the services they provide, such assignment does not include a right to pursue litigation on behalf of the assignor or patient. (*Id.* at 13).  Defendants' arguments are misplaced.

In *Wayne Surgical* the court considered whether an assignment of the right to seek reimbursement for medical services includes the right to pursue litigation to enforce those rights

under a plan.  The court explained that "numerous circuit courts to have considered the standing-by-assignment issue have 'held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.'"  *Wayne Surgical*, 2007 WL 2416428, at *4.  The court was persuaded by the Fifth Circuit's reasoning in *Tango Transport v. Healthcare Financial Services*, 322 F.3d 888 (5th Cir. 2003), in which the court held that it was "nonsensical for an original health care provider assignee to receive both welfare benefits and the right to enforce them via derivative standing, but a subsequent assignee can receive only the benefits, but not the right to enforce them." *Wayne Surgical*, 2007 WL 2416428, at *4 (quoting *Tango Transport*, 322 F.3d at 893).  In light of the reasoning set forth in *Tango Transport*, the court held it would be "illogical to recognize that [plaintiff] WSC as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."  *Id.*

Similarly, here, as the Court has already determined, the language provided by Plaintiffs indicates an assignment of a right to reimbursement.  As this District has previously held, such a right must logically include the ability to seek judicial enforcement of that right.  *Wayne Surgical*, 2007 WL 2416428, at *4; *but see Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan*, 2007 WL 2793372, at *3 (D.N.J. Sept. 25, 2007).[3]

Based on the foregoing, the Court finds that the assignments of right to reimbursement signed by the Plan participants and beneficiaries do provide Plaintiffs with an accompanying right to sue in this Court, *i.e.*, derivative standing, under ERISA.

### d.  Enforceability of Anti-Assignment Provisions

---

[3] Defendant's contention that Premier does not allege that it informed Health Net of the assignments is unavailing. (Health Net Moving Br. at 15).  Again, Defendants do not cite to any law to support these contentions.  Second, Health Net's argument that it was not provided with notice of the assignments is undermined by its course of dealing with Plaintiffs as described later in this Opinion.  Defendants cannot act as though valid assignments exist through course of conduct and then challenge the assignment's very existence in litigation.  *Gregory Surgical*, 2007 WL 4570323, at *4 (Greenaway, Jr., U.S.D.J.).

The Court next determines whether anti-assignment provisions in the EOC for this plan are enforceable. Premier argues that even assuming this Court were to find the anti-assignment provisions enforceable, Defendants waived such provision and are estopped from raising it based on their past dealings and course of conduct. (Pl. Opp. Br. re: Health Net at 23-24).

The Third Circuit has not ruled on whether anti-assignment provisions in health care plans are enforceable, *Glen Ridge*, 2009 WL 3233427, at *4. Further complicating the issue is the fact that New Jersey's district courts are split on the issue. Some courts in this district have found that the presence of a clear, unambiguous anti-assignment provision is valid and enforceable. *Wayne Surgical*, 2007 WL 2416428, at *4; *Briglia v. Horizon Healthcare Svcs., Inc.*, No. 03-6033, 2005 WL 1140687, at *4-5 (D.N.J. May 13, 2005); *Cohen v. Independence Blue Cross*, No. 10-4910, 2011 WL 5040706, at *8 (D.N.J. Oct. 24, 2011).[4] However, at least one court has refused to recognize the validity of an anti-assignment provision, reasoning that "it would be illogical . . . to be a valid reimbursement assignee but not [be able] to judicially enforce that right." *Ambulatory Surgical Ctr. Of N.J. v. Horizon Healthcare Servs*, No. 07-2538, 2008 U.S. Dist. LEXIS 13370, at *8 (D.N.J. Feb 21, 2008). Thus, the presence of an anti-assignment provision in the United plans at issue could negate Premier's standing to sue United.

Notwithstanding, Plaintiffs assert that even if ERISA permits the enforceability of anti-assignment provisions, United should be precluded—under theories of equitable estoppel and waiver by course of dealing—from enforcing the anti-assignment provision. (Pl. Opp. Br. re: Health Net at 23-24). Plaintiffs argue that "Health Net waived its right to challenge the validity of any assignments due to its direct payments to [Premier Health Center] and the manner in

---

[4] *See Briglia*, 2005 WL 1140687, at *4 (D.N.J. May 13, 2005) for a list of courts in other jurisdictions finding that "unambiguous anti-assignment provisions in group health care plans are valid."

- 15 -

which it treated its claims." (*Id.* at 23) (pointing generally to facts alleged and the assignment language provided in paragraphs 6, 7, and 27-34 of the Amended Complaint).

Under New Jersey contract law, "[w]aiver is the intentional relinquishment of a known right. Waiver must be voluntary and there must be a clear act showing the intent to waive the right. Furthermore, waiver presupposes a full knowledge of the right and an intentional surrender." *Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2007 WL 4570323, at *2 (D.N.J. June 1, 2006) (citing *Cnty. of Morris v. Fauver*, 707 A.2d 958, 970 (N.J. 1998)). Moreover, courts have held that "an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, *i.e.*, taking no action to invalidate the assignment vis-à-vis the assignee." *Id.* (citing *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. Super. Ct. App. Div. 1997) (finding that New Jersey does recognize waiver of anti-assignment provisions)).

Plaintiffs argue that United and Health Net waived the anti-assignment clause by the above-mentioned course of dealing. (Pl. Opp. Br. re: United at 14; Pl. Opp. Br. re: Health Net at 22). United contends that its direct payment of reimbursements to Premier conforms to the terms of the plans at issue and thus cannot constitute a waiver. (United Reply Br., D.E. 62 at 17).

The court in *Gregory Surgical*, 2007 WL 4570323, at *2 dealt with allegations of course of dealing similar to those presented here. In that case, plaintiff argued that the defendant's actions constituted a waiver of the anti-assignment provisions, based upon a course of conduct which, according to the court, included: "discussions of patient coverage under health care policies, direct submission of claim forms, direct reimbursement of medical costs, and engagement in appeal processes." *Id.* at *4. Defendant Horizon argued—as Defendants do here—that direct payment of reimbursements to plaintiff were within the terms of the plans at

issue and thus could not constitute a waiver. *Id.* The court reasoned that although defendant's direct payments to plaintiff would not constitute a waiver if authorized under the plans at issue, the complaint alleged "a course of conduct beyond direct reimbursement for medical services." *Id.* at *9. Indeed, plaintiff's complaint described "regular interaction between Horizon and GSS prior to and after claim forms are submitted, without mention of Horizon's invocation of the anti-assignment clause." *Id.* at *4. Such actions impeded defendant's ability to rely on the anti-assignment provision to challenge plaintiff's standing. *Id.* Accordingly, the court held that defendant's actions with regard to plaintiff constituted a waiver of any right to enforce the anti-assignment provision.

Similarly, here, the Amended Complaint alleges a course of conduct beyond direct reimbursement for medical services. Indeed, the Amended Complaint describes regular interaction between United and Premier prior to and after claim forms were submitted, without mention of United's invocation of the anti-assignment clause. (*See* AC ¶¶ 6-7, 13-20, 27-34). Such conduct includes: letters from Health Net notifying Premier of overpayments, demanding a refund, and notifying Premier of the proper procedure to dispute Health Net's decision (*id.* ¶ 27-28); telephone calls between Health Net and Premier about Premier's appeals (*id.* ¶ 31); and communications with Premier via e-mail regarding recoupments for the overpayments. (*Id.* ¶ 32-33). Such actions impede United or Health Net's ability to rely on the anti-assignment provision to challenge Premier's standing. *See Gregory Surgical,* 2007 WL 4570323, at *3 (quoting *Garden State Bldgs.*, 702 A.2d at 1322 ("[A]n anti-assignment clause may be waived by . . . a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-à-vis the assignee.")).

In light of the above, the Court finds that based upon Defendants' course of conduct with

Plaintiffs, Defendants have waived any right to enforce the anti-assignment provision. Therefore, Plaintiffs have met their burden to establish standing to sue under ERISA.

### 2. United and Health Net's Remaining Arguments Against the non-Association Plaintiffs

Having determined that Premier alleged sufficient facts in its Amended Complaint to support ERISA standing, this Court will now turn to United and Health Net's remaining arguments seeking dismissal.

### a. Whether the Claims Against the Health Net Defendants Are Sufficiently Pleaded Under Fed. R. Civ. P. 12(b)(6)

Health Net argues that Plaintiffs assert each cause of action against "United," effectively lumping all defendants together as "United" and making all of them responsible for the allegations against UnitedHealth. (Health Net Moving Br. at 22). For example, Plaintiffs do not name either of the Health Net Defendants in Counts I through IV or in the request for relief— they only refer to "United" (and twice to Optum). (*See* AC ¶¶ 145-173). Plaintiffs "do not connect their limited allegations about Health Net to any theory sufficient to support treating all defendants collectively in their causes of action." (Health Net Moving Br. at 22-23). Health Net argues that such "general pleadings do not put each Health Net defendant on notice of the claims that are asserted against it." (*Id.* at 23). Specifically, Plaintiffs do not explain how Health Net of the Northeast's provision of administrative services to UnitedHealth would make it liable for United's actions. (*Id.*). Health Net contends that the Amended Complaint fails to explain how UnitedHealth's acquisition of Health Net creates any liability for Health Net based on United's actions. Further, Plaintiffs have failed to show sufficient facts to plausibly conclude that Health Net acted as an ERISA fiduciary. (*Id.*).

The Amended Complaint mentions Health Net (usually referring collectively to Health Net of New York and Health Net of the Northeast) several times throughout the Amended Complaint.  Specifically, Plaintiffs allege the following:

> United (including Optum and the Health Net Defendants, acting in their own names) engaged in numerous post-payment audits and have improperly recouped or otherwise sought to recover payments from, or improperly denied coverage for services provided by, many Providers, including the Individual Plaintiffs, in violation of ERISA. Moreover, United and OptumHealth have imposed various policies in violation of ERISA designed to reduce or deny coverage for health care services, as detailed herein.  (AC ¶ 23).

> Due to the manner in which Defendants function with respect to their United Plans, they are all functional ERISA fiduciaries and, as such, must comply with fiduciary standards. Moreover, in making coverage determinations relating to their United Insureds, Defendants must comply with the terms and conditions of the applicable health care plans and otherwise must comply with ERISA and its underlying regulations.  (*id.* ¶ 24).

> Due to the role United (or the Health Net Defendants) played in administering the United Plans that provided the insurance to the patients whose claims were subsequently determined to be overpaid, including making coverage and benefit decisions and deciding appeals, it acted as a fiduciary under ERISA. Under ERISA, United cannot deny coverage for such services unless the applicable health care plan expressly includes an exclusion specifying that such services are not covered benefits.  (*id.* ¶ 88).

In addition, Plaintiffs specifically identify actions taken by Health Net of New York to obtain refunds, deny appeals and begin recoupments, which Plaintiffs believe make Health Net liable under ERISA.  (*See id.* ¶¶ 27-34) (discussing letters from Health Net of New York to Premier denying the appeal, demanding refunds and beginning the recoupments).

In their Opposition Brief, Plaintiffs provide some clarification as to the claims against Health Net:

> To be clear, PHC is the only individual plaintiff asserting claims against Health Net . . . [on the basis of] Health Net's recoupment activities. Additionally, the Association Plaintiffs assert claims against Health Net on behalf of their respective memberships, seeking prospective injunctive relief[.] That said, even assuming various scrivener's errors have resulted in Health Net being

> inadvertently "lumped" into allegations pertaining to United (which has acquired all of Health Net's operations in the northeast part of the United States, including in New Jersey, New York and Connecticut), the allegations relating directly to Health Net's recoupments from PHC are more than adequate to put Health Net on notice of the claims asserted against it[.]

(Pl. Opp. Br. re: Health Net at 3 n.4). Two conclusions can be drawn from the statement above and the allegations from the Amended Complaint reiterated before it. First, Plaintiffs admit that the claims raised against Health Net are based entirely on the facts alleged in paragraphs 27-34 of the Amended Complaint. (*Id.*) ("the allegations relating directly to Health Net's recoupments from PHC are more than adequate to put Health Net on notice of the claims asserted against it"). Importantly, those facts appear to only be alleged against Health Net of New York. Defendant does not appear to deny that the allegations in these paragraphs are sufficiently pled. Taking the facts alleged in those paragraphs as true, and taking into consideration Plaintiff's admission, the Court finds that the claims raised by Premier against Health Net of New York—the only claims against Health Net by Plaintiff's own admission—are sufficiently pled. The claims identify the Defendant (Health Net of New York), when the alleged conduct occurred (January 6 – March 16, 2010), and what exactly Health Net of New York allegedly did that would make it liable for an ERISA violation (unwarranted denial of appeals, inappropriate recoupment measures, and violation of Plaintiffs' ERISA rights). (*See* AC ¶¶ 27-34).

Second, as Defendant argues, there are insufficient allegations to support any claim against Health Net of the Northeast. (Health Net Moving Br. at 27). Plaintiff's allegation that "due to the manner in which Defendants function with respect to their United Plans, they are all functional ERISA fiduciaries" is too vague. (AC ¶ 24). Further, Plaintiffs treat the two Health Net Defendants inconsistently throughout the Amended Complaint. In some instances, they are lumped together with the other Defendants and referred to collectively as "United" or

"Defendants."  In other instances, they are referred to as "Health Net" even though they are two separate entities and only one—Health Net of New York—is referred to with any specificity in the allegations.  The Court finds that any claims against Health Net of the Northeast are insufficiently pled because Plaintiffs never specifically refer to Health Net of the Northeast in the Amended Complaint and therefore that individual entity is not put on notice of what particular conduct would make it liable under ERISA.  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556) (factual pleadings must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and a complaint that pleads facts "'merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement of relief'").

**b. Whether Plaintiffs can Maintain their Claims against Health Net in Light of § 503**

Health Net next argues that "Plaintiffs' claim in Count III, alleging that Defendants violated § 503—and therefore cannot sue under § 502(a)(3)—by failing to provide a 'full and fair review' of denied claims, fails as a matter of law" because that claim "is properly brought against the benefit plan allegedly responsible for the benefits sought, not against third parties that process the claims."  (Health Net Moving Br at 26).  According to Health Net, § 503 applies only to an "employee benefit plan"—not to third parties such as Health Net who merely process claims for benefits.  (*Id.*).  Put another way, § 503 imposes duties on the plan, and not on the plan administrator.  (*Id.*).

Conversely, Plaintiffs argue that Health Net "mistakenly posits" that Plaintiffs cannot sustain a claim against Health Net under § 502(a)(3).  (Pl. Opp. Br. re: Health Net at 2).  According to Plaintiffs, they are not seeking to impose liability on Health Net under § 502(a)(3) for failing to provide a full and fair review of denied claims.  (*Id.*).  Rather, Plaintiffs are seeking

equitable relief under §502(a)(3), asking the Court to enjoin Health Net from pursuing any of its repayment demands "(and returning any funds it has recouped from Premier and members of the putative class)" until it has first fully complied with ERISA.  (*Id.* at 2-3).  Further, ERISA does not explicitly limit the class of defendants in a § 502(a)(3) action.  (*Id.* at 2, 31-33).  In response, Defendants argue that Plaintiff's clarification about the relief it seeks under § 502(a)(3) is irrelevant because Plaintiffs must first establish that § 503 imposes liability upon third parties like Health Net.  (Health Net Reply Br. at 11).

Section 503 of ERISA requires that every employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133.  "Although § 502 provides the private right of action to bring a claim to recover benefits due, § 503 sets forth the basic requirements governing ERISA plans."  *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 850-51 (3d Cir. 2011).  "A plan that does not satisfy the minimum procedural requirements of § 503 and its regulations operates in violation of ERISA."  *Id.* at 851.

Plaintiffs have not provided any evidence or argument explaining why § 503 imposes liability on Health Net of New York.[5]  They have simply alleged that Health Net of the Northeast provides administrative services to United.  (AC ¶ 22).  Providing administrative services is not the same as being a Plan Administrator, as the latter is a term of art and specifically defined under ERISA.  *See Groves v. Modified Retirement Plan for Hourly Paid Employees of Johns Manville Corp.*, 803 F.2d 109, 116 (3d Cir. 1986) (The word "plan administrator" is a "term[] of art under ERISA. [It is] defined . . . as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'") (citations omitted).  Nor have Plaintiffs provided

---

[5] The Court only mentions Health Net of New York because it has already dismissed all claims against Health Net of the Northeast earlier in this Opinion.

any documentation that identifies Health Net as the plan administrator or plan sponsor. *See* 29 U.S.C. § 1002(16)(i)-(ii). Indeed, Plaintiffs specifically identify United as the plan administrator. (*See* AC ¶¶ 90, 91, 95, 163). Thus, Plaintiffs have not provided any evidence or argument explaining why § 503 imposes liability on Health Net of New York.

Accordingly, Count III against Health Net of New York is dismissed.

### e.      Miscellaneous Arguments by United

Next, United argues that Count IV of the Amended Complaint, seeking equitable relief under ERISA, must be dismissed on several grounds. Each of these is addressed in turn.

First, United argues that Plaintiffs Rodgers and O'Donnell may not properly seek injunctive relief under § 502(a)(3) since they are no longer part of the OptumHealth network and therefore cannot show a non-speculative threat that they will again experience injury as a result of the alleged wrongdoing. (United Moving Br. at 13-14). United contends that, because they are ONET providers, neither they nor their patients are subject to any "preauthorization" requirements any longer. (*Id.* at 14). "It follows that they cannot establish any risk of future injury if the 'preauthorization' process is not enjoined." (*Id.*). Further, United argues that Plaintiffs cannot satisfy the requirement that any risk of injury they may face will be redressed by an injunction because the continued existence and use of UnitedHealth's "preauthorization" process is completely irrelevant to these plaintiffs. (*Id.*).

These arguments are flawed. United ignores the fact that Plaintiffs are bringing the pre-authorization claims as assignees of their patients who are still associated with United or Optum. Therefore, Plaintiffs' patients may again experience injury as a result of United's preauthorization process and violations of ERISA and are thus entitled to request injunctive relief to prevent United from continuing its alleged wrongdoing. *See Horvath v. Keystone*

- 23 -

*Health Plan E., Inc.*, 333 F.3d 450 (3d Cir. 2003) (noting that "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights" and finding that ERISA created certain rights in the non-provider plaintiff, and that plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief" under ERISA). To that end, the Court finds that the out-of-network providers may seek injunctive relief under § 502(a)(3).

Next, United argues—relying on cases from other circuits and tangentially related United States Supreme Court cases—that the disgorgement remedy Plaintiffs seek in Count IV is neither appropriate nor equitable "since ERISA exists not to remedy the purported business injuries [such as loss of income and patients] of providers but to ensure that the terms of patients' plans are enforced." (United Moving Br. at 14-15) (citation omitted). These economic losses are the result of Rodgers and O'Donnell deciding to leave the network and become ONET providers—they are not tied to any violations of ERISA. (*Id.* at 14-15). United's argument is misguided.

> In Count IV, Plaintiffs seek the following relief:
>
> Plaintiffs seek appropriate declaratory and injunctive relief (1) to enjoin United from pursuing its efforts to coerce recoupment or otherwise compel payment and, further, to order United to return any funds it has received or withheld from the Individual Plaintiffs and members of the Class as a result of its recoupment efforts, and (2) to enjoin United from applying the Optum policies which violate ERISA and disgorge profits it has earned through improper benefit denials.

(AC ¶ 173). Based on a plain and literal reading of Claim IV's request for relief, Plaintiffs do not appear to be referring to economic losses resulting from Rodgers' and O'Donnell's having to leave the network. Rather, it appears Plaintiffs are seeking disgorgement of profits earned from money kept from the beneficiaries of the plan (and their assignees in this case). Such a request for disgorgement does appear to be available to Plaintiffs. *See Fotta v. Trustees of United Mine Workers of Am., Health & Retirement Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998) ("We

therefore hold that a beneficiary of an ERISA plan may bring an action for interest on *delayed* benefits payments under section 502(a)(3)(B) of ERISA.") (emphasis added); *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 214 & n.28 (3d Cir. 2004) ("[W]e need look no further than the ERISA plans that withheld Skretvedt's benefits for several years and profited with respect to the withholding of those benefits. . . . Skretvedt has sufficiently identified specific funds traceable to the defendant ERISA plans that belong in good conscience to him."; "Indeed, as several circuit courts have noted, the Senate Finance Committee, in its report on ERISA, specifically contemplated that "appropriate equitable relief" under § 502(a)(3)(B) would include, '[f]or example, . . . a constructive trust [to] be imposed on the plan assets[.]'") (citations omitted). Accordingly, the Court finds that Plaintiffs may seek disgorgement in Claim IV because they are not seeking damages for economic injury but rather a return of payments and accumulated interest.

### 3. Whether the Associational Plaintiffs Have Standing

Finally, both Health Net and United argue that the Association Plaintiffs—the Congress of Chiropractic State Associations, American Chiropractic Association, Ohio State Chiropractic Association, and Missouri State Chiropractic Association—lack standing because the claims they assert and the relief they seek require their members to personally participate in this case. (*See* Health Net Moving Br. at 27; United Moving Br. at 16).[6]

United and Health Net identify several potential problems with allowing the Associations to proceed on behalf of their members. Defendants argue—relying on cases from the Northern District of Illinois and Southern District of Florida—that "variations between the claims" require the participation of individual members of the Associations. (United Moving Br. at 16).

---

[6] Health Net joins the argument made by United on associational standing and does not independently advance an argument on this issue. (*See* Health Net Moving Br. at 27).

Plaintiffs explain that the Associations seek only injunctive relief on behalf of the members of the Associations. (*See* Pl. Opp. Br. re: Health Net at 20) ("The Association Plaintiffs are seeking injunctive relief on behalf of their members, and, in so doing, their claims focus on reforming the improper practices United has engaged in that force providers to reduce the services they offer to subscribers."); (Pl. Opp. Br. re: United at 34 n.18) ("To the extent the FAC could be read to allow the Association Plaintiffs to pursue monetary damages, the Association Plaintiffs confirm here that they are limiting their claims to injunctive relief.").

An association must satisfy a three-prong test in order to establish standing. It must prove that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). "The need for some individual participation, however, does not necessarily bar associational standing under this third criterion." *Hosp. Council v. City of Pittsburgh*, 949 F.2d 83, 89-90 (3d Cir. 1991).

Relying almost completely on case law from other jurisdictions, Defendants argue that Plaintiffs cannot prove the third element because the claims they assert and the relief they seek require a fact-intensive inquiry that necessitates their members to personally participate in this case. (United Moving Br. at 16-19).

The Third Circuit was presented with a similar argument in *Pennsylvania Psychiatric*. In that case, a professional psychiatrist association alleged that the managed health care organizations "impaired the quality of health care provided by psychiatrists to their patients by refusing to authorize necessary psychiatric treatment, excessively burdening the reimbursement

process and impeding other vital care." *Pa. Psychiatric*, 280 F.3d at 280. The plaintiff associations contended that the managed health care organizations refused to

> [A]uthorize and provide reimbursement for medically necessary mental health treatment; interfered with patients' care by permitting non-psychiatrists to make psychiatric treatment decisions; violated Provider Agreements by improperly terminating relationships with certain psychiatrists; and breached the contractual duties of good faith and fair dealing by failing to timely pay psychiatrists and by referring patients to inconvenient treatment locations, thereby depriving some patients access to treatment.

*Id.* at 282. The principal issue presented to the court was whether the Pennsylvania Psychiatric Society's requests for declaratory and injunctive relief would require an inappropriate level of individual participation so as to make standing unavailable to the Society. *Id.* at 280. The defendants argued that the medical coverage decisions on psychiatric care and substance abuse services were fact-intensive inquiries. *Id.* at 285. Specifically, the defendants asserted that "the examination of medical care determinations will demand significant individual participation." *Id.*

While the Third Circuit agreed that "conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry," it noted that the Society maintained that "the heart of its complaint involves systemic policy violations that will make extensive individual participation unnecessary." *Id.* at 286. The Society contended that the methods defendants used for making decisions—"*e.g.*, authorizing or denying mental health services, credentialing physicians, and reimbursement"—constituted challenges to alleged practices "that may be established with sample testimony, which may not involve specific, factually intensive, individual medical care determinations." *Id.* For that reason, the Third Circuit remanded the case to the district court with the instruction that the associations be allowed to proceed on associational standing. *Id.* at 287. Importantly, while the court questioned whether plaintiffs

could establish these claims with limited individual participation, it noted that "on a motion to dismiss for lack of standing, [the court] review[s] the sufficiency of the pleadings and 'must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff.'" *Id.* at 286. The court reasoned that the deference paid to plaintiffs on a motion to dismiss counseled against dismissing plaintiff's suit "before [plaintiff] is given the opportunity to establish the alleged violations without significant individual participation." *Id.* To that end, the Third Circuit concluded that because the appeal arose "on a motion to dismiss, the Pennsylvania Psychiatric Society should be allowed to move forward with its claims within the boundaries of associational standing." *Id.*

The Court finds the logic expressed in *Pennsylvania Psychiatric* applicable here where the Associations have made it clear that they are seeking only injunctive relief. (*See* AC ¶ 19) ("The Association Plaintiffs bring this action in an associational capacity on behalf of their members to obtain appropriate injunctive relief. . . ."); (*see also* Pl. Opp. Br. re: Health Net at 20; Pl. Opp. Br. re: United at 34 n.18). As in *Pennsylvania Psychiatric*, Defendants here argue that the claims raised by Plaintiffs require a fact-intensive inquiry that necessitates individual participation. However, taking Plaintiff's allegations as true, as the Court must, it appears that the Associations are seeking injunctive relief to address "improper audits, repayment demands and recoupments of benefit payments from Defendants" and for "various other practices employed by United and Optum designed to improperly limit benefits paid for patient treatment." (AC ¶ 19). Further, as Plaintiffs explain in their Opposition Brief, "the Association Plaintiffs here challenge United's general practices, and seek an alteration of the *process* by which it handles repayment demands or applies its preauthorization methodologies with regard to chiropractic services.'" (Pl. Opp. Br. re: United at 21). While the Court is uncertain as to

whether the Association Plaintiffs can establish their claims without individual participation, *Pennsylvania Psychiatric* counsels against dismissing claims based on lack of associational standing at this early stage in the litigation. *Pa. Psychiatric*, 280 F.3d at 286. The Associations should be "given the opportunity to establish the alleged violations without significant individual participation." *Id.* Discovery will reveal if the Associations can meet their burden as to the third prong. Accordingly, the Court finds that the Associations have standing to bring ERISA claims on behalf of their individual members.

## V.      Conclusion

Based on the foregoing, Health Net's motion to dismiss (D.E. 29) is GRANTED as to all claims pertaining to Health Net of the Northeast, and as to Count III against Health Net of New York. United's motion to dismiss (D.E. 31) is DENIED. An appropriate Order shall follow.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**