## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTEGRATED ORTHOPEDICS, INC., *on behalf of itself and a certified class of others similarly situated,* | Civil Action No.: 11-425 (ES)(JAD) |
| Plaintiff, | |
| v. | |
| UNITEDHEALTH GROUP, *et al.*, | |
| Defendants. | Motion Date: September 8, 2020 |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

D. Brian Hufford
Jason S. Cowart
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Fl.
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256

Andrew N. Goldfarb
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106

John W. Leardi, Esq.
Vincent N. Buttaci, Esq.
Paul D. Werner, Esq.
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, NJ 08540
Tel: (609) 799-5150
Fax: (609) 799-5180

Anthony F. Maul
THE MAUL FIRM, P.C.
101 Broadway, Suite 3A
Oakland, CA 94607
Tel: (510) 496-4477

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................2

    A.    ERISA Notice and Appeal Rights ...........................................................2

    B.    United's Repayment Requests ................................................................3

    C.    Procedural History of This Action ..........................................................5

    D.    Mediation and Settlement Negotiations .................................................7

SUMMARY OF THE SETTLEMENT ................................................................7

    A.    Main Provisions—Injunctive Relief and Release ..................................7

    B.    Other Provisions ....................................................................................10

ARGUMENT ......................................................................................................12

I.      LEGAL STANDARD FOR PRELIMINARY APPROVAL ......................12

II.     THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL. ......................................................14

    A.    The Class Representative and Class Counsel Have Adequately Represented the Class.............................................................................15

    B.    The Settlement Was Negotiated at Arm's Length. ..............................16

    C.    The Relief Provided for the Class Is Adequate. ..................................17

        1.    The recovery for the Class is exceptional. ................................18

        2.    Costs, risks, and delay of trial and appeal .................................18

        3.    Proposed award of attorneys' fees and expenses......................19

    D.    The Settlement Treats Class Members Equitably Relative to Each Other. ...........................................................................................20

    E.    The *Girsh* Factors Either Support Preliminary Approval, Are Inapplicable, Or Are Premature for Consideration at This Stage. .......21

III.    THE NOTICE PLAN SATISFIES RULE 23 ............................................22

IV.    PROPOSED SCHEDULE..........................................................................24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

2012 WL 135608 (D.N.J. Apr. 4, 2012) ........................................................3

2014 WL 4271970 (D.N.J. Aug. 28, 2014) ...................................... 3, 4–5

2014 WL 7073439 (D.N.J. Dec. 15, 2014) ..................................................3

292 F.R.D. 204 (D.N.J. 2013) ......................................................................3

*Alves v. Main*, No. 01-789,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012),
    *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ...............................................16

*Atis v. Freedom Mortg. Corp.*, Civil No. 15-03424 (RBK/JS),
    2018 WL 5801544 (D.N.J. Nov. 6, 2018) ..............................................12

*Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF),
    2011 WL 1344745 (D.N.J. Apr. 8, 2011) ....................................... 20–21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................14

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ......................................................... 13–14, 21

*Nyby v. Convergent Outsourcing, Inc.*,Civ. No. 15-886 (ES) (MAH),
    2017 WL 3315264 (D.N.J. Aug. 3, 2017) ..............................................14

*Shapiro v. All. MMA, Inc.*, Civil No. 17-2583 (RBK/AMD),
    2018 WL 3158812 (D.N.J. June 28, 2018) ....................................... 12, 13

*Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS),
    2019 WL 4894568 (D.N.J. Oct. 4, 2019) ................................................13

**STATUTES**

29 C.F.R. § 2560.503-1 .......................................................... 2–3, 8

29 U.S.C. § 1132 ..............................................................................9

29 U.S.C. § 1133 ..................................................................................................2

**RULES**

Fed. R. Civ. P. 23 ................................................................... *passim*

Plaintiff-Class Representative Integrated Orthopedics, Inc. ("Named Plaintiff," "Class Representative," or "IO"), by its undersigned counsel, submits this Memorandum in Support of its Unopposed Motion for Preliminary Approval of Settlement.

## INTRODUCTION

This class action concerns the notice and appeal rights that United, as the ERISA claims administrator to thousands of discrete ERISA plans, gives to an out-of-network ("ONET") provider when United claims to have overpaid the provider and requests a refund. When the provider fails to return the requested money, United often offsets future payments, i.e., withholding money due the provider for treating other United insureds in order to recover the claimed overpayment. Under the practices challenged in this case, when United sent a repayment request, it did not give ONET providers the notice and appeal rights required under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*. ("ERISA") or regulations promulgated thereunder, 29 C.F.R. § 2560.503-1 (the "ERISA Claims Regulation"). As a result, ONET providers have often lacked important information about United's request for a refund and how (if at all) United's determination could be challenged. This case was brought to address this problem.

After ***nine*** years of contentious litigation and protracted settlement negotiations, the parties have executed a settlement (copy attached hereto as Exhibit

1

A) (the "Settlement Agreement" or "Settlement") that accomplishes this case's objectives. The Settlement will significantly increase the information available to ONET providers facing United repayment demands compared to the challenged practices. The Settlement requires United to give Class members full notice and appeal rights for recent Claim Redeterminations. And critically, it also establishes easy-to-follow mechanisms for Class member and other ONET providers to obtain notice and appeal rights as authorized representatives of their patients in the future.

In short, the Settlement will ensure greater transparency in health insurance claims processing, and level the playing field in disputes between providers and United. By any measure, the Settlement is fair, reasonable, and adequate.

## FACTUAL BACKGROUND

### A.     ERISA Notice and Appeal Rights

Section 503 of ERISA, 29 U.S.C. § 1133, requires every ERISA plan to "provide adequate notice in writing" concerning the denial of benefits and afford "a full and fair review" including an appeal of that denial decision. The ERISA Claims Regulation, 29 C.F.R. § 2560.503-1, implements that statutory mandate by requiring Plan fiduciaries like United to provide written notification "of any adverse benefit determination" that contains specified information "in a manner calculated to be understood" by the recipient, including:

2

- "The specific reason or reasons for the adverse determination;"

- "Reference to the specific plan provisions on which the determination is based;"

- "A description of any additional material or information necessary" to perfect the claim;

- "A description of the plan's review procedures and the time limits applicable to such procedures," including notification that the claimant has a right to bring a civil action under ERISA to challenge the decision; and

- Making available, free of charge, copies of any "internal rule, guideline, protocol, or similar criterion [that] was relied upon in making the adverse determination."

29 C.F.R. § 2560-503.1(g)(1)(i)-(v). These due process requirements that apply whenever an ERISA fiduciary denies all or part of a reimbursement claim are referred to herein as "ERISA notice and appeal rights."

## B.    **United's Repayment Requests**

United's policies and practices concerning its overpayment determinations and repayment requests are described in various opinions the Court has issued in this case. *See, e.g.*, 2012 WL 135608 (D.N.J. Apr. 4, 2012); 292 F.R.D. 204 (D.N.J. 2013); 2014 WL 4271970 (D.N.J. Aug. 28, 2014); and 2014 WL 7073439 (D.N.J. Dec. 15, 2014). In short, United insures and/or administers healthcare plans that are subject to ERISA (a "Plan" or "United Plan"). When a claim for benefits is submitted by an ONET provider on behalf of her patient, United adjudicates the claim and, if

3

it determines that benefits are owed, causes the plan it is administering to pay such benefits to the ONET provider.

Later, United sometimes decides that its prior adjudication of the claim was inaccurate and that it overpaid the provider (an "Overpayment Determination"). In such cases, United sends the ONET provider a written repayment request (a "Repayment Request"). The Repayment Request identifies the date of the alleged overpayment, requests a refund, and threatens to recover the alleged overpayment through an involuntary offset of a future payment if the provider does not send United the requested amount by a certain date. Decl. of Andrew N. Goldfarb in Supp. of Pl.'s Mot. for Prelim. Approval ¶ 3 ("Goldfarb Decl."). Evidence adduced by Plaintiff shows that, as of 2015, United was annually sending approximately 1.6 million Repayment Requests; and, in 2011 alone, United collected more than $180 million in resulting involuntary offsets, including about $31 million against out-of-network providers. Goldfarb Decl. ¶ 4.

Plaintiff's central allegation in this case was that United was required to—but did not—comply with the ERISA Claims Regulation in the context of Repayment Requests. Among other things, Plaintiff alleged, and the Court found, that United's requests failed to reference the specific reasons or plan provisions on which the overpayment determination was based, did not describe "additional material or information necessary" to perfect the claim, and did not inform providers who are

4

assignees or authorized representatives for their patients that they have the right to an ERISA appeal, or that, after exhaustion of their appeals, such providers can bring a civil action to challenge the overpayment determination. *E.g.*, 2014 WL 4271970 at \*19–20. United has denied that ERISA § 503 or the ERISA Claims Regulation applies to its Repayment Requests on the ground that only Plan beneficiaries (*i.e.*, patients) are entitled to such rights.

### C.   <u>Procedural History of This Action</u>

After extensive pre-litigation investigation and review of documents, a group of plaintiffs commenced this lawsuit on January 24, 2011. (ECF 1.) The operative compliant in this case (the Second Amended Complaint, or "SAC") was filed on April 15, 2013, and one of the named plaintiffs was Tri3. (ECF 206.) The SAC alleged, inter alia, that United failed to comply with ERISA § 503 and the ERISA Claims Regulation by failing to make required disclosures in connection with Repayment Requests and failing to provide "full and fair review" of United's overpayment determinations. *Id*.

After extensive discovery, negotiated stipulations by the parties and orders by this Court, and multiple rounds of class certification briefing, on August 28, 2014, this Court granted plaintiffs' motion to certify an ONET Repayment Demand Class, which was defined to be providers with unresolved Repayment Requests.

5

*See* ECF 308 at 44 n.25; ECF 295 (describing class definition).[1] The certification was subject to submission of additional evidence that Tri3 had a claim that fit within the definition of the Class. (ECF 308.)

On December 2, 2014, this Court entered an order granting the unopposed motion filed by plaintiffs to substitute IO in place of Tri3 as Named Plaintiff and Class Representative. (ECF 319.) On December 15, 2014, the Court entered an order vacating the August 28, 2014 class certification order and unconditionally certifying the Class under Rule 23(b)(1) and (b)(2), with IO as Class Representative. (ECF 321.)

Extensive discovery was taken by both sides, during both the class certification and merits phases of this action. Collectively, the parties produced and reviewed over 11,600 documents consisting of approximately 162,000 pages. Goldfarb Decl. ¶ 5. The parties also took 27 separate depositions. *Id*.

On August 31, 2015, the parties filed cross-motions for summary judgment, and United filed a motion to decertify the Class. (ECF 348, 353, 355.)

---

[1] In certifying the Class, the Court recognized that membership in the Class would change as Repayment Requests were resolved, and the Court described how to account for that change as the litigation progressed. (ECF 308 at 46–47.) Pursuant to the Court's solution, the Settlement Agreement fixes the Class as those with unresolved Repayment Requests as of the date of the Settlement Agreement. Agmt. § I.e. As it did when it was appointed Class Representative in 2014, Named Plaintiff IO has such an unresolved Repayment Request. Goldfarb Decl. ¶ 11.

**D.**     **Mediation and Settlement Negotiations**

At the same time the parties were actively litigating their dispute (2011–2015), they were also actively discussing the possibility that the case could be settled. Over the years, they considered and rejected a variety of settlement approaches.

In light of these considerations, on June 14, 2016, this Court stayed the action, terminated the August 31, 2015 motions (subject to reinstatement), and referred this case to mediation. This Court designated The Honorable Garrett E. Brown, Jr. of JAMS as mediator. (ECF 395.) In November 2018, in response to United's request to extend the stay, the Court again referred the case to mediation before Judge Brown. (ECF 413.) On July 26, 2020, the parties executed the Settlement Agreement.

Plaintiff now seeks preliminary approval of the Settlement of this class action.

## SUMMARY OF THE SETTLEMENT

**A.**     **Main Provisions—Injunctive Relief and Release**

The Settlement has two main features.

First, it provides significant relief to members of the Class. For Class members who have a recent Claim Redetermination, the Settlement provides them with critical rights that will enable them to challenge the alleged overpayment that underlay the Repayment Request. Agmt. § II.c. United will provide Class members with a notice:

(i) stating that, with respect to recent Claim Redeterminations,[2] United will treat them as Authorized Representatives[3] of the relevant plan beneficiaries; (ii) providing details about the Repayment Request and the bases for the Claim Redetermination; (iii) informing them that they may appeal the Claim Redetermination within 180 days, that United will decide such an the appeal within 540 days, and that the Class member may then file an action under ERISA after exhaustion of the appeals; and (iv) stating that the Class member may request copies of additional information relevant to the Claim Redetermination. *Id.* § II.c(i). If a Class member files such an appeal United shall be subject to the requirements of the ERISA Claims Regulation, and United will not recover the alleged overpayment as long as the appeal is pending, giving the provider important protection. *Id.* §§ II.c(ii), II.d. In short, Class members

---

[2] The parties agreed to use one year as the "lookback" period to identify recent Claim Redeterminations because that is the period of time when (a) in part due to United's policy of adhering to state law time limits on its ability to recoup overpayments, Class Members are at the greatest risk of having the alleged overpayment recovered by United, via offset, collection, or otherwise; and (b) United has the maximum ability to provide the specified appeal rights. The twelve-month period is "approximate" only to reflect that United's internal systems cannot show the exact date on which a reprocessed EOB was issued to a provider from its overpayment data system; United has agreed to determine the universe of eligible providers as closely as can be determined through reasonable effort. Goldfarb Decl. ¶ 9.

[3] The ERISA Claims Regulation specifies that claimants may appoint an "authorized representative" to act "on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." 29 C.F.R. § 2560.503-1(b)(4). The term "Authorized Representative" as defined in the Settlement agreement reflects and includes that provision.

with a Recent Claim Redetermination will receive exactly the rights reflected in the ERISA Claims Regulation so that they have access to the critical information they need to meaningfully challenge the Repayment Request.

The Settlement also provides Class members (and all ONET providers, not just Class members with a recent Claim Redetermination) with critical go-forward relief. It creates a mechanism by which United will recognize and accept an ONET provider as the authorized representative for his or her patients for all UNET system claims to the full extent consistent with the patient's Authorized Representative Form. Pursuant to an Authorized Representative Form, the provider might gain rights to act on a patient's behalf with respect to all benefit determinations covered by the scope of the authorization, the rights available to the patient under the ERISA Claims Regulation, the right to pursue appeals of benefit determinations and to obtain related records, and to file claims on a patient's behalf for such medical or other healthcare service benefits, insurance, or healthcare benefit plan reimbursement, and the right to pursue any other applicable remedies for the patient, including under 29 U.S.C. § 1132. *Id.* §§ I.a, II.g; Ex. 5 to Settlement Agmt. To facilitate this relief, United has created a template Authorized Representative form that it will make available to providers through its website, and that it will accept to grant authorized representative status to the provider. Agmt. § II.g. The parties have also agreed that, as to Plans administered by United as of the Effective Date of the

Settlement, if the provider utilizes an "assignment of benefits" form with language that includes particular language (which is identified in Exhibit 6 to the Settlement Agreement), United will treat the provider as an authorized representative, regardless of the document's effectiveness as an assignment of benefits. *Id.*

Second, in exchange for this relief, the Settlement provides United with a reasonable release of claims by the Class. *Id.* § I.t. (definition of Released Class Claims); *id.* § III.h. The Class will release any claims seeking injunctive or declaratory relief for United's alleged failure to afford notice and appeal rights set forth in the ERISA Claims Regulation with respect to any Overpayment Determination identified in United's UNET system. Importantly, *excluded* from the release are claims for denial for benefits, claims brought under ERISA after administrative appeal of a Claim Redetermination, and claims that challenge United's policy and practice of offsetting payments for new and unrelated claims as a means to recover an alleged overpayment. *Id.* § I.t.

## B.   <u>Other Provisions</u>

<u>Notice and objection procedures.</u> If the Court preliminarily approves the Settlement, United will provide individual mailed notice to Class members, based on contact information in United's records. *Id.* § III.c.; Ex. 1. The Short Form Notice will summarize the substantive provisions of the Settlement, explain that Class members may object to the settlement, and direct Class members to the settlement

website for more information. Ex. 1. The Settlement Website will contain more detailed information (i.e., the Long Form Notice) about the Settlement, the objection procedures, and time deadlines, as well as key case documents and contact information for the parties' counsel and Settlement Administrator. Agmt. §§ III.c–d.; Ex. 2 (Long Form Notice).[4]

<u>Payment of a portion of Class Counsel's fees and expenses.</u> The Settlement provides for payment by United of $4,210,000 to Class Counsel, subject to Court approval. Agmt. § II.h. This is only about 52% of the fees and expenses incurred on behalf of Plaintiff and the Class.

<u>Incentive award for Named Plaintiff.</u> The Settlement also provides for an incentive award to the Named Plaintiff of $40,000 in recognition of its services as the Class Representative. *Id.* § II.i. The Named Plaintiff participated actively in this long-running litigation, including having three different personnel prepare and sit for lengthy depositions. It kept abreast of developments in the case, and oversaw Class Counsel's efforts, in order to promote and protect the Class's interests.

<u>Dismissal of severed claims.</u> The Settlement provides for the dismissal of other claims that were severed from this case. *Id.* § II.j.

---

[4] The Court certified the Class under Rule 23(b)(1) and (b)(2) and did not provide an opt-out right.

## ARGUMENT

I. **LEGAL STANDARD FOR PRELIMINARY APPROVAL**

Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *Atis v. Freedom Mortg. Corp.*, Civil No. 15-03424 (RBK/JS), 2018 WL 5801544, at *2 (D.N.J. Nov. 6, 2018). At the first stage, the Court makes a preliminary evaluation of whether it is likely to find the proposed settlement fair, reasonable, and adequate. *Id.* If it preliminarily approves the proposed settlement, the Court directs that notice be provided to the class, to afford class members an opportunity to be heard on or object to the settlement. *Id.*; Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the Court holds a formal fairness hearing where the Court, after consideration of any objections from Class members, decides if the settlement merits final approval as "fair, reasonable, and adequate." *See Shapiro v. All. MMA, Inc.*, Civil No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018); Fed. R. Civ. P. 23(e)(2).

Under Rule 23, the Court should order that notice be given to the Class if Plaintiff shows that the Court will likely be able to approve the proposed Settlement as "fair, reasonable, and adequate" under the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i). The Rule 23(e)(2) factors are whether:

12

(A)   the class representatives and class counsel have adequately   represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

  (i)   the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

As preliminary approval is not binding, it is granted unless a proposed settlement is "obviously deficient." *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019) (internal citations omitted); *Shapiro*, 2018 WL 3158812, at *2.

The identification of factors governing approval of a class settlement in Rule 23 is not intended to displace factors that the Circuits have used to assess settlements, but rather "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee's note to 2018 amendment (Subdivision (e)(2)). Consistent with the Rule 23(e)(2) factors, the Third Circuit requires a court to evaluate whether a settlement is fair, reasonable, and adequate by applying the following factors:

13

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoting with approval *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)); *Nyby v. Convergent Outsourcing, Inc.*, Civ. No. 15-886 (ES) (MAH), 2017 WL 3315264, at *7 (D.N.J. Aug. 3, 2017).

Plaintiff will first review the Rule 23(e)(2) factors, then address any of the non-duplicative *Girsh* factors.

## II.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL.

The Settlement easily satisfies the factors set out in Rule 23(e)(2). The Court is more than likely to conclude that it is fair, reasonable, and adequate. As a result, the Court should preliminarily approve the Settlement and order that notice be given to the Class.

A.   **The Class Representative and Class Counsel Have Adequately Represented the Class.**

The Court is likely to find that both the Class Representative and Class Counsel have adequately represented the Class, contributing substantially to the favorable outcome reflected in the Settlement.

<u>Class Representative</u>. In its December 2014 decision certifying the Class, the Court found that IO fit within the class definition and that the Class met all of the Rule 23 requirements for certification, including the "adequacy of representation" requirement of Rule 23(a). (ECF 320 at 12.) Soon thereafter, the parties undertook an extensive and intensive period of discovery in 2015. Three IO personnel sat for lengthy depositions—one IO executive gave two depositions—and IO followed case developments throughout the case. *See* Goldfarb Decl. ¶ 8. In short, nothing has changed since the Court's conclusion that IO is an appropriate Class Representative: IO continues to fit within the Class definition, *id* ¶ 11, and has responsibly performed its Class Representative duties since its appointment. This requirement is easily satisfied.

<u>Class Counsel</u>. In the original class certification decision, the Court found that counsel for the Class—Zuckerman Spaeder LLP, Buttaci Leardi & Werner, PLLC, and The Maul Firm, P.C.—had "advocated vigorously and admirably" in favor of the Class. ECF 308 at 42 n.22. As with IO, nothing has changed since then. After securing certification of the Class, Class Counsel continued its advocacy for the

Class. Class Counsel conducted extensive fact and expert discovery concerning the merits of the case, uncovering evidence that supported the motion for partial summary judgment that Plaintiffs filed in August 2015. Goldfarb Decl. ¶ 9. The focused efforts and expertise of Plaintiff's counsel put Plaintiff in a strong position to prevail on summary judgment or at trial. It also positioned Plaintiff well for the negotiations that culminated in this Settlement.

**B.   The Settlement Was Negotiated at Arm's Length.**

The case was filed in 2011. The parties litigated aggressively for five and a half years until June 2016, when the Court stayed the case and ordered the parties to mediate under the supervision of JAMS's Judge Brown. During the mediation and the arm's-length negotiations that followed, both sides had information produced in discovery or for purposes of settlement that enabled them to evaluate the strengths and weaknesses of their respective cases. The parties were meaningfully aided in their negotiations by Judge Brown. *See Alves v. Main*, No. 01-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") (citations omitted).

Plaintiff was well informed during this process. Plaintiff engaged in aggressive fact discovery in the months after class certification, deposing over 20

people and gathering significant documentary evidence, all of which informed its decision to move for partial summary judgment. In short, Plaintiff went into the mediation and settlement negotiations armed with years of evidence to support its claims, and drew on that evidence during the settlement process. Goldfarb Decl. ¶ 10. Plaintiff agreed to the Settlement only after it had secured the meaningful injunctive relief for the Class that prompted the suit originally.

### C.   The Relief Provided for the Class Is Adequate.

The Court is likely to find that the relief obtained for the Class easily satisfies the "adequacy" standard in Rule 23(e)(2), taking into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and the equal treatment of all Class members. Fed. R. Civ. P. 23(e)(2)(C).

As noted above, Plaintiff brought this case with a single objective: obtaining basic due process rights for providers who were subject to Repayment Requests. That objective has been achieved. Previously, when United issued a Repayment Request to a provider, based on United's conclusion that it had previously overpaid the provider for previous services, the provider lacked access to the information necessary to contest the repayment—including the terms of the Plan at issue or precise reason for the Repayment Request. According to United, such information

17

was only owed to the provider's patient. This created a problem, however, because Repayment Request are generally sent to providers, not patients. As a result, providers were deprived of basic information necessary to understand and meaningfully respond to the request. The Settlement remedies that problem.

### 1.   The recovery for the Class is exceptional.

The Settlement provides the relief that Plaintiff sought through the litigation. It not only gives Class members who are the subject of unresolved Overpayment Determinations an immediate set of procedures and rights to allow them to meaningfully challenge United's recent Claim Redeterminations, it establishes a mechanism by which, going forward, United will recognize ONET providers as the "authorized representatives" of their patients and afford them ERISA rights.

### 2.   Costs, risks, and delay of trial and appeal.

This case has gone on long enough. After nine years, Plaintiff has secured via settlement essentially all of the relief it sought at summary judgment or would have requested after a trial.

Although Plaintiff believes it would have had a strong chance of prevailing at summary judgment, trial, and on any subsequent appeals, the Class would face both procedural and substantive obstacles to obtaining a final judgement. First, Plaintiff would have to defeat United's summary judgment motion. Second, it is likely that United would seek to narrow or de-certify the Class, including by challenging

providers' standing to pursue ERISA remedies for their patients, given (i) the variation in assignment-of-benefits agreements upon which the providers depend to assert their claims, and (ii) anti-assignment provisions in United health plans. Assuming a decision for Plaintiff on liability, the parties would then litigate the precise contours of the procedural remedy. Plaintiff would also have to defeat United's likely post-trial appeals, which would include attempts to decertify the Class and to reverse any judgment or remedy ordered by the Court. Thus, Plaintiff estimates that, even if successful, it would take more than two years to obtain a final judgment. Only thereafter would United begin affording Class members basic notice and appeal rights.

Against this backdrop, the Settlement is more than adequate. Settlement eliminates the risk that the litigation could end unsuccessfully, with no relief for the Class. At the same time, the scope of the release is fair to both parties. In consideration for the substantial benefits to Class members, the Settlement allows United to eliminate legal risks arising from or relating to its refusal to grant ERISA rights to providers in the context of Repayment Requests.

3.   <u>Proposed award of attorneys' fees and expenses.</u>

The Court is also likely to find Plaintiff's request that Class Counsel receive an award of $4.21 million for fees and expenses to be fair, reasonable, and adequate. United will pay this money to Class Counsel, and it will not diminish any relief to

the Class or disadvantage Class members in any way. Indeed, the requested award is only about 52% of the total fees and costs incurred by Plaintiff's counsel. Given the relief that Class Counsel has achieved for the Class, and the investment of time and resources by Class Counsel with substantial risk of non-recovery, the Court is highly likely to find that Counsel's request to receive only about half of its lodestar plus expenses is eminently reasonable.

Under the proposed schedule, Plaintiff will file, in advance of the deadline for objections, a detailed motion supporting the request to award Class Counsel the attorneys' fees and expenses. Class members will be able to evaluate the fee and expense request when deciding whether to object to the Settlement.

### D.   The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff or segments of the Class. All Class members will receive the same relief.

For the reasons discussed *supra*, IO has earned the proposed incentive award to reflect its important contribution to the successful resolution of this case. As part of the motion for attorneys' fees and expenses, Plaintiff will support the reasonableness of the proposed incentive award. *See, e.g.*, *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at \*22 (D.N.J. Apr. 8, 2011) (recognizing that incentive awards "compensate named plaintiffs for the services

they provided and the risks they incurred during the course of class action litigation," and "reward the public service of contributing to the enforcement of mandatory laws.") (citations omitted).

### E. The *Girsh* Factors Either Support Preliminary Approval, Are Inapplicable, Or Are Premature for Consideration at This Stage.

As quoted *supra*, the *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d at 157. The foregoing discussion addresses most of the *Girsh* factors, including the first, third, fourth, and eighth factors. As the Class is receiving significant and valuable procedural rights in the Settlement—and neither sought nor obtained money—several of the factors (seventh, fifth, and ninth) have limited applicability. In its motion for final approval, Plaintiff will address the second factor, the reaction of the Class to the Settlement.

The Court therefore should find, as a preliminary matter, that it is likely to approve the proposed Settlement as fair, adequate, and reasonable.

III.   **THE NOTICE PLAN SATISFIES RULE 23**

Rule 23(e)(1)(B) requires that the Court direct that notice be given to class members who would be bound by the Settlement "in a reasonable manner." For classes certified under Rule 23(b)(1) or (b)(2), notice must be "appropriate." Fed. R. Civ. P. 23(c)(2)(A). Here, the Settlement provides for two types of notice to the Class:

1.   <u>Short Form Notice (Exhibit 1)</u>: The Settlement Administrator[5] will send the Short Form Notice directly to the persons on the Class List via first class mail. The Short Form Notice summarizes the nature of the action and the right to object to the Settlement, and the time deadline for doing so; contains contact information for Class counsel; and directs Class members to a Settlement website for more detailed information.

2.   <u>Settlement Website with Long Form Notice (Exhibit 2)</u>: Pursuant to Rule 23(c)(2)(B), the Settlement website will provide the Long Form Notice, which contains a detailed description of (a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defenses; (d) the main terms of the Settlement; (e) how a Class member may enter an appearance through an attorney

---

[5] Plaintiff requests that the Court appoint A.B. Data, Ltd. as the Settlement Administrator. A.B. Data has extensive experience executing notice plans and administering class action settlements effectively and efficiently. *See* www.abdataclassaction.com; Goldfarb Decl. ¶ 12.

if the member so desires; (f) the time and manner for objecting to the Settlement; (g) information about the fairness hearing; and (g) the binding effect of a class judgment on members under Rule 23(c)(3). The Long Form Notice conforms to the form recommended by the Federal Judiciary Center (*see, e.g.*, https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction).

The proposed notice is the best notice practicable because the Short Form Notice will provide direct notice to Class members of this action and the proposed Settlement, using United's records to identify the names and addresses of Class members.[6] The Long Form Notice and the other information available on the Settlement website will provide all the information required to be disseminated by Rule 23(c)(2)(B), as well as the Stipulation and Settlement and other valuable information and relevant Court pleadings. As a result of the proposed notice procedure, Plaintiffs believe that most (if not all) Class members will receive direct notice of the proposed Settlement. The proposed notice procedure is the best—and only reasonable—procedure under the circumstances.

---

[6] For Class members on the Class List whose mailed Notice is returned as undeliverable, the Settlement Administrator will use its best efforts to locate updated addresses and send the Notice to such Class members at their new addresses.

IV.   **PROPOSED SCHEDULE**

Plaintiff proposes the following schedule for the period leading up to the fairness hearing at which the Court will consider whether to grant final approval to the proposed Settlement.

| DATE | EVENT |
|---|---|
| Day 1 | Order entered granting preliminary approval |
| Day 30 | Last day to provide Class notice |
| Day 50 | Plaintiff files request for attorneys' fees and expenses and incentive award for Class Representative |
| Day 70 | Last day for Class members to object to Settlement |
| Day 90 | Last day for Plaintiff to file a motion for final approval of the Settlement and to respond to objections |
| Day 105 or after | Fairness hearing |

## CONCLUSION

For the foregoing reasons, the Court should: (i) grant preliminary approval to the proposed Settlement Agreement; (ii) approve the proposed schedule concerning notice and objection deadlines; (iii) appoint AB Data, Ltd. as the Settlement Administrator; and (iv) set a hearing for final approval of the Settlement. A proposed order is attached as Exhibit A to the Settlement Agreement.

Respectfully submitted,

Dated: August 5, 2020

/s/ John W. Leardi

D. Brian Hufford                                    John W. Leardi, Esq.
Jason S. Cowart                                     Vincent N. Buttaci, Esq.
ZUCKERMAN SPAEDER LLP                               Paul D. Werner, Esq.
485 Madison Avenue, 10th Fl.                        BUTTACI LEARDI & WERNER LLC
New York, NY 10022                                  212 Carnegie Center, Suite 202
Tel: (212) 704-9600                                 Princeton, NJ 08540
Fax: (212) 704-4256                                 Tel: (609) 799-5150
                                                    Fax: (609) 799-5180

Andrew N. Goldfarb
ZUCKERMAN SPAEDER LLP                               Anthony F. Maul
1800 M Street, NW, Suite 1000                       THE MAUL FIRM, P.C.
Washington, DC 20036                                101 Broadway, Suite 3A
Tel: (202) 778-1800                                 Oakland, CA 94607
Fax: (202) 822-8106                                 Tel: (510) 496-4477

*Attorneys for Plaintiff*

25